IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

IN RE:  Native Son Landscaping, LLC        CASE NO. 8:18-bk-07968-CPM

                                                  CHAPTER 11

__Debtor_____/

## DISCLOSURE STATEMENT

Native Son Landscaping, LLC the above-captioned Debtor and Debtor-in-Possession, hereby files and proposes its Disclosure Statement in the form and content set forth herein.

MELODY D. GENSON, ATTORNEY AT LAW
2750 Ringling Blvd., Suite 3
Sarasota, Florida 34237
Telephone: (941) 365-5870
Facsimile: (941) 365-5872
Attorney for Debtor

# TABLE OF CONTENTS

|       |                                                                 | Page |
|-------|-----------------------------------------------------------------|------|
| I.    | INTRODUCTION                                                    | 2    |
|       | A. Purpose of Disclosure Statement                              | 2    |
|       | B. Source of Information                                        | 2    |
|       | C. Manner of Voting on the Plan                                 | 2    |
|       | D. Hearing on Confirmation of the Plan                          | 3    |
|       | E. Acceptances Required to Confirm the Plan                     | 3    |
| II.   | EVENTS LEADING TO FILING OF CHAPTER 11 PETITION                 | 3    |
|       | A. Background                                                   | 3    |
|       | B. Commencement of Chapter 11 Case                              | 4    |
|       | C. Pending Litigation                                           | 4    |
| III.  | SUMMARY OF PLAN OF REORGANIZATION                               | 4    |
| IV.   | EXECUTORY CONTRACTS                                             | 10   |
| V.    | ANTICIPATED MEANS OF EXECUTION OF PLAN                          | 11   |
|       | A. Funding                                                      | 11   |
|       | B. Historical Data and Future Projections                       | 11   |
| VI.   | LIQUIDATION ANALYSIS                                            | 11   |
| VII.  | RISK FACTORS                                                    | 12   |
| VIII. | CRAMDOWN                                                        | 13   |
| IX.   | MODIFICATION OF PLAN                                            | 13   |
| X.    | FINAL DECREE                                                    | 13   |
| XI.   | CONTINGENCIES                                                   | 13   |
| XII.  | PROFESSIONAL PERSONS                                            | 13   |
| XIII. | CONCLUSION                                                      | 14   |

INCOME AND EXPENSES          REFERENCE EXHIBIT "A"
PRO FORMA BUDGET             REFERENCE EXHIBIT "B"

I.  INTRODUCTION

   A.  Purpose of Disclosure Statement:

Native Son Landscaping, LLC the above-captioned debtor and debtor-in-possession (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement") to all of the known creditors and parties in interest in order to disclose that information deemed by the Debtor to be necessary to arrive at a reasonably informed decision in exercising a right to vote for acceptance or rejection of their Plan of Reorganization dated January 17, 2019 (the Plan). This Disclosure Statement is intended to enable the Debtor's creditors to make an informed decision in voting to accept or reject the Plan. For the reasons set forth more fully herein, the Debtor hereby recommends and solicits acceptance of their proposed Plan by all persons entitled to vote on the Plan.

   B.  Source of Information:

The source of the information contained within the Disclosure Statement is derived from the Debtor's books and records, historical data, and financial projections prepared by the Debtor and the Debtor's bookkeeping service.

**The information contained herein has not been subject to a certified audit. The records kept by the Debtor are dependent upon accounting performed by the Debtor. Because a current audit does not exist, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies or omissions, although great effort has been made to be accurate.**

**No representations concerning the Debtor is authorized by the Debtor other than those set forth in this statement. Any representations or inducements made to secure your acceptance, which are other than as contained in this statement, should not be relied upon by you in arriving at your decision. Such additional representations and inducements should be reported to counsel for the Debtor who, in turn, shall deliver such information to the Bankruptcy Court.**

   C.  Manner of Voting on the Plan:

All creditors entitled to vote on the Plan may cast their vote for or against the Plan by COMPLETING, SIGNING, DATING, AND MAILING THE BALLOT accompanying this Disclosure Statement TO THE UNITED STATES BANKRUPTCY COURT AT THE SAM M. GIBBONS UNITED STATES COURTHOUSE, 801 N. FLORIDA AVENUE, STE. 555, TAMPA, FL 33602-3899, or the

Ballot can be submitted electronically through the Bankruptcy Court's website at: www.flmb.uscourts.gov and selecting "Electronic Filings" and "Chapter 11 Ballots", ON OR BEFORE THE TIME STATED THEREON

A copy of the ballot should be mailed to debtors' counsel Melody D. Genson, Attorney At Law, at: 2750 Ringling Boulevard, Suite 3, Sarasota, FL 34237.

D. Hearing on Confirmation of the Plan:

The United States Bankruptcy Court, Tampa, Florida, shall schedule the hearing on the confirmation of the Plan by separate order. Each party-in-interest will receive, either with this Disclosure Statement or under separate cover, the Bankruptcy Court's notice of hearing on confirmation of the Plan. Attendance is not mandatory, but creditors are invited to attend the Confirmation Hearing on the Plan and voice their opinion for or against objections, if any, filed with regard to confirmation of the Plan.

E. Acceptances Required to Confirm Plan:

As a creditor, your acceptance is important. In order for the Plan to be deemed accepted, the ballots must be tabulated. Of the ballots cast, more than one-half (½) in number of votes must be for the Plan. In addition, of the ballots cast, the favorable majority must also represent two-thirds (2/3rds) of the dollar amounts of all votes cast.

Further, unless there is unanimous acceptance of the Plan by a class that is deemed impaired under the Plan, the Bankruptcy Court must also determine that, under the Plan, members of such class will receive, as of the effective date of the Plan, property of a value that is not less than the amount that such class of creditors would receive or retain should the Debtor liquidate under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

## II. EVENTS LEADING TO FILING OF CHAPTER 11 PETITION

A. Background:

The Debtor in this Chapter 11 case is a limited liability company, which formed in 2013. The Debtor is a landscape business, and operates its business in the Sarasota and Bradenton, Florida area. The Debtor has one owner John L. Blaser, who owns 100% of the company. The member of the Debtor, John L. Blaser, has many years of experience in the landscape business. The Chapter 11 Bankruptcy for the Debtor was needed due to aggressive collection efforts concerning the Debtor's unsecured, priority and secured creditors, which were taking place in 2018. The Debtor's business operations had suffered greatly

3

after hurricane Irma in September 2017. The Debtor could not maintain after predatory lenders began debiting the Debtor's operating accounts daily in 2018.

The Debtor's financial problems started due to Florida's last two years of storm and hurricane conditions, which affected the landscape business. In September 2018 the Debtor determined that its business could not generate sufficient revenue to pay its obligations for all of the secured, priority and unsecured debt accumulated. The Debtor needed time to develop a plan for payment to creditors, and could not do so without the control of a Chapter 11 Bankruptcy.

This Chapter 11 Bankruptcy was filed on September 20, 2018. The Debtor expects to collect sufficient revenues in order to fund the Plan of Reorganization.

### B. Commencement of Chapter 11 Case:

On September 20, 2018, the Debtor, Native Son Landscaping, LLC filed a voluntary petition for relief under Chapter 11 of the U. S. Bankruptcy Code with the U. S. Bankruptcy Court for the Middle District of Florida, Tampa Division. This case was assigned Case Number, 8:18-bk-07968-CPM and was assigned to the Honorable Catherine Peek McEwen.

Upon the commencement of the Chapter 11 case, the Debtor became "Debtor-in-Possession" and have continued in possession of its assets and to operate its business.

### C. Pending Litigation:

Prior to the filing of the Chapter 11 Bankruptcy, the Debtor was involved in the following legal actions:

1. Lorendzo Holte vs. Native Son Landscaping, LLC, Sarasota County Case No. 2016 SC 004697 NC. This is lawsuit brought by a former employee of the Debtor.
2. Post-Petition creditor, Green Capital Funding, LLC, filed a state court action and a judgment was entered. After the Debtor filed a Motion to Void Post-Petition Judgment and Motion for Sanctions, the Court ordered the judgment vacated.

## III. SUMMARY OF PLAN OF REORGANIZATION (Consult Plan for full details.)

### A. In General

The Plan provides for, among other things, the classification and treatment of claims against the Debtor, the funding mechanism for the Plan, provisions governing distribution under the Plan, provisions for the treatment of executory contracts and unexpired leases, provisions for the treatment of disputed

4

claims, conditions to, and effects of, Plan confirmation, and provisions regarding the Bankruptcy Court's jurisdiction after the Effective Date.

B. Property to be Distributed

The collateral of secured creditors will be retained, surrendered or transferred pursuant to the terms and conditions of distribution more thoroughly described herein. Cash will be distributed under the Plan to holders of allowed secured, priority and general unsecured claims. The cash will be distributed in payments over the life of the Plan. The cash will emanate primarily from the revenues collected by the Debtor.

C. Classifications and Treatment of Claims and Interests

1. Unclassified Claims:

a. Administrative Claims Administrative claims are unimpaired under the Plan. The Debtor shall pay the allowed claim of the following administrative claims as set forth below:

1. Any administrative expense, allowed pursuant to Section 503 of the Bankruptcy Code, upon appropriate application and as granted by the Court not already paid prior to confirmation, the Debtor shall pay in full and in monetary funds (cash) within thirty (30) days of the effective date of the Plan or as otherwise agreed between the claimant and the Debtor.

2. The Debtor paid counsel of record, Melody D. Genson, a retainer fee of $15,000.00. Additional fees as approved by the Court shall be paid upon the entry of an order approving same or as otherwise agreed between counsel and the Debtor.

b. Priority Tax Claims Each holder of an Allowed Priority Tax Claim shall be paid by the Debtor by deferred equal monthly cash payments, in full, over the life of the plan, not to exceed six (6) years from the date of assessment. Interest shall be paid as allowed by law. Priority payments shall begin twelve months from the effective date of the Confirmation of the Plan.

c. United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

d. Classified Claims and Interests: The following is a breakdown of the classes of claims and interests:

**CLASS I.** Secured – Hancock Whitney Bank (Impaired):
Proof of Claim No. 1
Secured UCC Filed October 21, 2014
UCC No. 20140242645
Collateral: Business Equipment blanket lien
Maturity: September 15, 2019

Hancock Whitney Bank has a first lien on all of the Debtor's business equipment. The creditor shall retain its lien. The allowed amount of the secured claim shall be paid, at the contract interest rate, pursuant to the contract until the maturity date of September 15, 2019. Beginning on October 15, 2019, and continuing for a period of seventy-two (72) months thereafter, the Debtor shall pay the allowed secured claim principal and interest in equal monthly payments until paid in full. Upon payment of the secured claim, in full, the creditor shall release the lien on the title to the collateral. Any unsecured portion of the creditor's claim shall be treated under Class IX.

**CLASS II.** Secured – Manatee County Tax Collector (Unimpaired):
Proof of Claim No. 3
Secured Amount: $309.49
Secured Tangible Property Taxes (2018)

Manatee County Tax Collector's claim shall be paid in full within thirty (30) days of the effective date of the confirmation order. Upon payment of the secured claim, in full, the creditor shall release the lien on the title to the collateral.

**CLASS III.** Secured – Ally Financial (Unimpaired):
Proof of Claim No. 4
Collateral: 2015 Chevrolet Silverado / VIN # 1GB4CYCG3FF528478
Pre-Petition Arrearages: $2,653.04

Ally Financial has a first lien on the Debtor's 2015 Chevrolet Silverado. Ally Financial shall retain its lien on the collateral. The Debtor shall pay the allowed secured claim pursuant to the contract, at the interest rate of 6.25%. The Debtor owes for post-petition payments of October and November 2018. The Debtor shall pay the regular contract payment amount of $855.82 on a monthly basis after confirmation, until the allowed secured claim is paid in full. The contract maturity date will be extended, as necessary, to allow the monthly payments to remain at an amount no more than $855.92. Upon payment of the allowed secured claim, in full, the creditor shall release the lien on the title to the collateral. The Debtor intends to try to keep the vehicle, but may surrender the vehicle at any time during

the Plan, in full satisfaction of the secured claim. Any unsecured portion of the creditor's claim shall be treated under Class IX.

      **CLASS IV.**    Secured – Ally Bank (Impaired):
                            Proof of Claim No. 5
                            Secured Amount: $30,423.09
                            Collateral: 2015 Isuzu NPR-HD / VIN # 54DC4J1B9FS807083

Ally Bank has a first lien on the Debtor's 2015 Isuzu NPR-HD. Ally Bank shall retain its lien on the collateral. The creditor repossessed the vehicle pre-petition. The Debtor shall pay the arrearage amount necessary to have the vehicle returned to the Debtor. Thereafter, the Debtor shall make payments pursuant to the contract terms and keep the vehicle. If the Debtor does not pay the amount necessary to have the vehicle returned, the surrender of the vehicle shall be considered as payment in full of the claim owed to Ally Bank. Upon payment of the secured claim, in full, the creditor shall release the lien on the title to the collateral. The Debtor intends to try to keep the vehicle, but may surrender the vehicle at any time during the Plan, in full satisfaction of the secured claim.

      **CLASS V.**    Secured – BB&T (Impaired):
                            Proof of Claim No. 6
                            Secured UCC Filed March 11, 2016
                            UCC No. 201606733891
                            Collateral: Business Equipment and
                            2005 Ford TL / VIN # 5NHUEHV205U205489 and
                            2013 ARNI / VIN # 5YCBE2027DH009885

BB&T has a second lien on all of the Debtor's business equipment and a first lien on the Debtors two vehicles. BB&T shall retain its lien on the collateral. The allowed amount of the secured claim shall be paid, at the contract interest rate, and payments of $792.80 until paid in full. The contract maturity date shall be extended as necessary to pay the amount of $3,964.00, which is the amount owed for pre or post-petition arrearages. These shall be paid at the normal contract rate of $792.80. Upon payment of the allowed secured claim, in full, the creditor shall release the lien on the title to the collateral. The Debtor may surrender the collateral at any time during the Plan, in full satisfaction of the secured claim. Any unsecured portion of the creditor's claim shall be treated under Class IX.

      **CLASS VI.**    Secured – Financial Pacific Leasing, Inc. (Impaired):
                            Proof of Claim No. 10

>Secured Amount: $2,500.00
>Collateral: 16x6 V Nose Enclosed Trailer 2015 ARNI /
>VIN # 5YCBE1621FH023396
>Secured Contract Date: 2015

Financial Pacific Leasing, Inc. has a first lien on the Debtor's trailer. Financial Pacific Leasing, Inc. shall retain its lien on the collateral, until the secured amount of the claim ($2,500.00) is paid in full. The creditor's Proof of Claim shows an unsecured part of its claim in the amount of $2,877.16. This amount shall be treated under the Unsecured Class IX.

The $2,500.00 post-petition secured debt shall be paid, at the interest rate of 5.00%. If the debt has not been paid in full by confirmation, the payments shall begin thirty (30) days after the effective date of the confirmation order. Payments shall be made over a twelve (12) month period, and shall be $214.03 per month, for a total of $2,568.36. Upon payment of the secured claim, the creditor shall release the lien on the title to the collateral.

**CLASS VII.** <u>Secured – Tokyo Century (USA), Inc. (Impaired)</u>:
>Proof of Claim No. 11
>Collateral: 2016 Isuzu NPR-HD / VIN # 54DC4J1BOG5808219
>2013 Isuzu Crew McVenture Dump Body / VIN # 54DC4J1B1D5803218
>2014 Isuzu NPR-HD / VIN # 54DC4J1BOE5800537

Tokyo Century (USA), Inc. has a first lien on three vehicles of the Debtor. Tokyo Century (USA), Inc. shall retain its lien on the collateral. Each contract, with collateral, shall be treated separately. Each vehicle shall be valued and the amount of the secured claim determined. As each lien is paid, the lien shall be released, as to that specific vehicle. Payments, on the secured claim, shall be pursuant to the contract; however, the contract maturity date shall be extended, as necessary, to pay the debt. Upon payment of the allowed secured claim, the creditor shall release the lien on the title to the collateral. There is more owed under each vehicle contract than the value of each vehicle. The value of each vehicle shall be determined and the unsecured portion of the creditor's debt shall be treated as an unsecured under the Unsecured Class IX. The Debtor intends to try to keep the vehicle, but may surrender the vehicle at any time during the Plan, in full satisfaction of the secured claim.

**CLASS VIII.** <u>Secured – Internal Revenue Service (Unimpaired)</u>:
>Proof of Claim No. 9

The Internal Revenue Service has filed a secured claim based upon liens filed and recorded in Sarasota County, Florida public records. The Debtor will file an objection to the proof of claim of the

Internal Revenue Service asking this court to determine whether the Internal Revenue Service has a secured interest in the Debtor's assets. The Debtor also disputes the amount of the claim of the Internal Revenue Service, and will ask the Court to determine the amount of the claim. The Debtor will pay the allowed claim of the Internal Revenue Service, as determined by the Court. Any secured claim will be paid over the life of the Plan, in sixty (60) equal installments, beginning twelve (12) months from the effective date of the confirmation order. Upon payment of the secured claim, in full, the Internal Revenue Service shall release the lien on the title to the collateral. The Internal Revenue Service priority claims and unsecured claims shall be treated as per the priority class and unsecured class stated respectively herein.

**CLASS IX.** General, Unsecured Creditors: The Debtor shall issue to unsecured creditors promissory notes in the amount of fifteen percent (15%) of their allowed claims.

The allowed unsecured creditors' claims will be paid as follows:

a) The Debtor shall provide to each unsecured creditor, with allowed claims, a promissory note that shall have a term of seventy-two (72) months, with payments commencing twelve (12) months from the effective date of the plan. The amount to be paid under the Note shall be the amount of fifteen (15%) the creditor's allowed claim.

- b) The Notes shall bear no interest.
- c) The Notes shall be paid in equal monthly installments over seventy-two (72) months, but may be paid in a lump sum, at the discretion of the Debtor.

d) Promissory Notes will be distributed within thirty (30) days of effective date of the confirmation order to those creditors holding allowed claims at the time of confirmation. Creditors holding disputed claims at the time of confirmation, if said claim is allowed after confirmation, will be issued a Promissory Note within thirty (30) days of the claim being allowed. Said promissory notes will also have a term of seventy-two (72) months from the date of issuance.

**CLASS X.** Equity Member: The Equity Members consists of the Equity Interest in the Debtor, which is held by John L. Blaser, the only Equity Member/Owner of the Debtor. At this time, there is no value to the ownership of the Debtor because the debts of the Debtor are greater than the assets of the Debtor. As new value to the Debtor, in order to retain the ownership and be an equity member, John L. Blaser shall waive any claims he may have against the Debtor, and shall continue to operate the company and be employed by the Debtor. It is the knowledge and expertise in the landscaping design business that John L. Blaser has that is key to the Debtor's business.

John L. Blaser, as Equity Member has contributed and will continue to contribute substantial new value to the Debtor as follows:

1. Assisting the Debtor in the financing of the Chapter 11 Plan through:

    (a) Agreeing to minimal increases in compensation during the term of the Plan.

    (b) Agreeing to defer any distribution of profits to member until the Plan is fully funded and completed.

    (c) Agreeing to waive his rights to file a claim against the Debtor for deferred compensation or loans to the Debtor prior to the bankruptcy filing.

B.    CLAIM DETERMINATION

The Debtor shall review claims and file any objections to claim within thirty (30) days after confirmation. The Debtor shall file any additional motions or pleadings to determine creditor rights or treatment within Sixty (60) days of Confirmation.

C.    EXECUTORY CONTRACTS

All executory contracts pending at the time of the filing of the Bankruptcy are rejected unless specifically assumed by the Debtor.

The Plan lists any executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy or assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**(The Deadline for filing a Proof of Claim based on a Claim arising from the Rejection of a Lease or Contract is thirty (30) days of the effective date of the Order Confirming Plan.** Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.)

D.  ANTICIPATED MEANS OF EXECUTION OF PLAN

In order to determine a means of funding the Plan, the Debtor has considered its income from the operation of its business, and the amount necessary to fund the Plan. The following is an analysis of these categories and the expected funding:

1.  Funding:

The Debtor will fund the Plan through the Debtor's business operations. The Debtor fully expects to be able to fund the Plan from operations.

2.  Historical Data and Future Projections:

The Debtor's pre-petition income and expenses for the years 2016 and 2017 are shown on Exhibit "A". The information comes from the Debtor's tax returns. Information from the Debtor's post-petition monthly operating reports are also listed. The Debtor's projected income and expenses are attached hereto as Exhibit "B" on the Debtor's pro forma. This pro forma demonstrates that the Debtor has the ability to meet the payments under the Plan. The Debtor has filed monthly operating reports with the Court. These can be reviewed also.

## IV. LIQUIDATION ANALYSIS

Section 1129 (a) (7) of the Bankruptcy Code requires that the Bankruptcy Court find that each holder of a Claim or Interest in each impaired class recover under a Chapter 11 Plan, on account of that Claim or Interest, a value at least equal to the value of the distribution that such holder would receive if the Debtor's assets were liquidated under a Chapter 7 bankruptcy.

In order to estimate the sum, which would be available for distribution to general unsecured creditors of this Debtor, the Debtor has taken into account the negative effects of a Chapter 7 liquidation on hard assets and the fluctuating nature and difficulty of collecting accounts receivable. The Debtor believes that a Chapter 7 Trustee would have nothing to administer because the assets are fully secured.

The Debtor's estimate of distribution in a Chapter 7 bankruptcy is as follows:

Estimated total value of the unsecured hard assets per Schedules          $ 2,000.00
*(Inventory, Desks and Computers)*
Equity in Vehicles                                                              -0-
*(8 Trucks and 5 Trailers*

*All vehicle values are fully secured by lienholders)*

| | |
|---|---|
| Accounts Receivable | -0- |
| *(The Internal Revenue Service may claim a secured interest in any Accounts Receivable.)* | |
| Petty Cash | -0- |
| Checking Accounts | $ 300.00 |
| Total: | **$ 2,300.00** |
| Reduction for estimated Chapter 11 Administration Fees- | To Be Determined but more than $2,300.00 |
| The amount left to distribute to priority creditors | -0- |
| Estimated Liquidation distribution to unsecured creditors | -0- |

Although liquidation under a Chapter 7 bankruptcy is always uncertain, the norm is that the reduction of asset value is substantial and the Debtor believes these estimated figures are correct.

Under this analysis, the Debtor's Plan pays substantially more to the creditors and meets the Best Interest of Creditors Test.

## V. RISK FACTORS

As in most Chapter 11 reorganizations, there is a risk that the Debtor will not be able to make payments as proposed under the Plan; however, the Debtor believes that the Debtor's monthly revenues will generate sufficient funds to pay all creditors as provided herein.

## VI. CRAMDOWN

In the event that any class of creditors is deemed impaired by this Plan of Reorganization and the requisite majorities of Class or Classes fail to approve this Plan of Reorganization, the Debtor intends to confirm its Plan of Reorganization over the objections of any such dissenting class, by use of the provisions of the Bankruptcy Code, Section 1129, and any other provisions relating to cramdown of dissenting classes.

## VII. MODIFICATION OF PLAN

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

Upon request of the Debtor, the United States Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

## VIII. FINAL DECREE

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such final decree on its own motion.

## IX. CONTINGENCIES

There are no contingencies to the confirmation of the Plan other than the Court entering the Confirmation Order confirming the Plan.

## X. PROFESSIONALS REPRESENTING DEBTORS

During the course of the Chapter 11 case, the Debtor has hired Melody D. Genson Attorney at Law, to serve as its attorney. The Debtor paid a $15,000.00 retainer fee. Fees are charged at a rate of $400.00 per hour plus costs. Additional fees and costs will be requested from the court.

The Debtor hopes the creditors will vote for the Plan and keep administrative fees from escalating.

All additional attorney's fees and costs are subject to court approval upon appropriate application for same.

The Debtor will need to retain a CPA for tax purposes. In due course, an Application will be filed seeking Court approval of retaining a CPA.

## XI. CONCLUSION

Based upon a comparison of the available alternatives, including forced liquidation of the Debtor's assets, and the disclosures contained herein, it is the judgment of the Debtor that the Plan offers all classes of creditors a greater return than would be otherwise possible.

**Accordingly, the Debtor respectfully requests support for the Plan which the Debtor believes will pay the creditors significantly more than such creditors would obtain in a Chapter 7 liquidation case or if the case were dismissed.**

**The Debtor urges each creditor to support the Plan by returning their ballots accepting the Plan.**

DATED: January 17th, 2019.

Native Son Landscaping, LLC
By: John L. Blaser
Title: Manager / Member

Melody D. Genson, Attorney at Law
2750 Ringling Boulevard, Suite 3
Sarasota, Florida 34237
Telephone: (941) 365-5870
Facsimile: (941) 365-5872
Florida Bar No. 342092
Attorney for Debtor

14

# INCOME & EXPENSE
## Native Son Landscaping, Inc.
### 84 Month Plan

| | | Oct-18 | Nov-18 | Dec-18 |
|---|---|---|---|---|
| **Debtor's Monthly Operating Reports** | | | | |
| Income and Cash Receipts: | | $ 92,814.58 | $ 69,101.00 | $ 107,853.01 |
| Disbursements: | | $ 81,787.27 | $ 90,249.10 | $ 105,534.07 |
| | | | | |
| **Tax Returns** | | | | |
| 2016 Average Monthly Income: | | $ 105,879.33 | | |
| 2016 Average Monthly Expenses: | | $ 106,053.00 | | |
| | | | | |
| 2017 Average Monthly Income: | | $ 108,718.08 | | |
| 2017 Average Monthly Expenses: | | $ 105,592.75 | | |
| | | | | |
| Expected Monthly Income: | | $ 100,000.00 | | |
| Expected Monthly Expenses: | | $ 91,500.00 | | |
| Average Monthly Net: | | $ 9,500.00 | | |
| Expected Monthly Expenses Decrease | | | | |
| From Cut Back of Expenses: | | $ 2,000.00 | | |
| Net Income to Fund Monthly Plan: | | **$ 11,500.00** | | |
| | | | | |
| Monthly Funds Needed to Fund Plan | | | | |
| **(Months 1-12):** | | | | |
| Secured Creditors: | | $ 6,800.00 | | |
| Monthly Total Funds Needed to Fund Plan: | | **$ 6,800.00** | | |
| | | | | |
| Monthly Funds Needed to Fund Plan | | | | |
| **(Months 13-84):** | | | | |
| Secured Creditors: | | $ 6,800.00 | | |
| Priority Creditor: | | $ 3,333.33 | | |
| Unsecured Creditors (15% of allowed claim): | | $ 488.72 | | |
| Monthly Total Funds Needed to Fund Plan: | | **$ 10,622.05** | | |

Exhibit "A"

# AVERAGE PROJECTED MONTHLY INCOME & EXPENSE
## Native Son Landscaping, Inc.
### 84 Month Plan

| | |
|---|---|
| **Income** | $100,000.00 - $110,000.00 |
| The projected average monthly income range, over the life of the Plan, is based upon monthly revenues and projected icnreases. | |
| **Expenses** | $88,000.00 - $95,000.00 |
| The projected average monthly expense range, over the life of the Plan, is based upon average monthly business expenses and projected decreases. | |
| The Debtor has considered normal fluctuations in Debtor's earnings and expenses in making these projections. | |
| **Projected Monthly Income Available to Fund the Plan:** | |
| Average Monthly Income Range: | $100,000.00 - $110,000.00 |
| Average Monthly Expenses Range: | $88,000.00 - $95,000.00 |
| **Average Monthly Net Income To Fund Plan:** | **$12,000.00 - $15,000.00** |
| **Approximate Monthly Amount Needed to Fund the Plan:** | |
| Secured Creditors: | $6,500.00 |
| Priority Creditor: | $3,333.33 |
| Unsecured Creditors Claims are expected to be $234,586.73 ($234,586.73 x 15% = $35,188.01 / 72 Months = $488.72): | $488.72 |
| **Total Approximate Monthly Amount Needed to Fund the Plan:** | **$10,622.05** |

Exhibit "B"